IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

**SEALED**

| | |
|---|---|
| PHILLIP M. ADAMS, et al.,<br><br>    Plaintiffs,<br><br><br><br><br>        vs.<br><br><br>GATEWAY, INC., f/k/a GATEWAY 2000, INC., a Delaware corporation,<br><br>    Defendant. | **SEALED** MEMORANDUM DECISION AND ORDER ON DE NOVO REVIEW OF  MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS AND IMPOSING SANCTIONS<br><br><br><br>Case No. 2:02-CV-106 TS |

I. INTRODUCTION

The discovery rules authorize sanctions for the failure to fully disclose or to preserve evidence in pretrial discovery. The Magistrate Judge's two Reports and Recommendations[1] find that the alleged infringer in this patent case, Defendant Gateway, has spoliated and failed to disclose evidence.  The Reports recommend sanctions including that Gateway should be prohibited from asserting the attorney-client or work product privilege in this

---

[1]Sealed Report and Recommendation Regarding Spoliation Motions (Docket No. 347) and Sealed Report and Recommendations Re: Gateway's Possession of Adams' Detector and Designation of Consulting Experts (Docket No. 346).

case, imposing negative inferences, awarding attorney fees and costs, and issuing a warning that further missing evidence or tardy disclosure of evidence may result in entry of judgment against Gateway.  Gateway opposes the Magistrate's recommendations on the grounds that although it admits inadvertent errors were made, it acted promptly to correct its failure to comply with discovery orders only two years after the collective memory failure of its busy attorneys and short-handed employees.  On de novo review, this Court finds and concludes that not only are the Reports and Recommendations correct in all respects, but the supplemental record presented to this Court since the Magistrate issued his recommendations confirms the necessity for severe, but not terminating, sanctions.

## II.  DE NOVO REVIEW

Since its inception, this case's ceaseless discovery disputes have been ably handled by Magistrate Judge Nuffer.  Accordingly, when Adams filed two potentially dispositive motions directly arising from those discovery disputes, this Court deferred to his familiarity with the disputes and referred the Motions to him under a "B reference" for a report and recommendation.[2]  When a party objects to a report and recommendation issued under a "B reference," this Court reviews the Magistrate Judge's Order under the de novo standard of review.[3]

In order to conduct a de novo review a court "should make an independent determination of the issues . . .; [it] 'is not to give any special weight to the

---

[2]28 U.S.C. § 636(b)(1)(B) (authorizing referral of dispositive motions to magistrate for report and recommendation).

[3]*First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (de novo standard of review applies to magistrate judge's orders with dispositive effect).

[prior] determination'. . .." "The district judge is free to follow [a magistrate's recommendation] or wholly to ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew."[4]

The Court has conducted a de novo review of the record and issues.  In so doing it has reviewed and considered the entire record cited by the Magistrate, including his Reports and Recommendations, the Objections, Response, Reply and Renewed Motion for Terminating Sanctions,[5] and the supplemental materials filed by Gateway.[6]

## III.  REPORTS AND RECOMMENDATIONS

A.     Spoliation Report

On March 29, 2005, the Magistrate Judge issued his Sealed Report and Recommendation[7] on Adams' Motion for Judgment Based upon Gateway's Spoliation of Evidence[8] (Spoliation Report).  The Spoliation Report also covered Gateway's Motion requesting an inference as a sanction for alleged spoliation of evidence by Adams.[9]  The

_____

[4]*Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. First City Nat. Bank,* 386 U.S. 361, 368 (1967) and *Mathews v. Weber,* 423 U.S. 261, 271 (1976)).

[5]Docket No. 366.

[6]Including Gateway's Supplemental Accounting (Docket No. 377) filed April 29, 2005, all exhibits attached to the briefing on the Objections, the Addendum (Docket No. 409) filed on September 1, 2005, the documents submitted pursuant to the Court's order at the August 19, 2005 hearing on the Objections (*see* Minute Entry at Docket No. 404), the tabbed exhibits attached to the August 31, 2005 cover letter (Docket No. 406) (Matava Letter), and the information provided pursuant to the Court's September 7, 2005 Order (Docket No. 407 and Response at Docket No. 410).

[7]Docket No. 347.

[8]Docket No. 101.

[9]Docket No. 186 (Gateway's Spoliation Motion).

3

Magistrate denied Gateway's Spoliation Motion[10] and Gateway does not object to that ruling.

The Magistrate considered a list of nine items[11] of evidence formerly in Gateway's control that are now missing.  He found the loss of all nine to be prejudicial to the evidentiary record.  The Magistrate also found that, of the nine, two are evidence that is clearly central to this case and their absence is "not remediated or minimized by other evidence."[12]  Those items are the e-mail from Charlie Ma to Y.C. Woon and the 3.60TEST utility.  The Magistrate found that there is no direct evidence that their loss was rooted in bad faith because there is no explanation for their loss or indication of the timing of the loss.  But he found that there is a *potential* for abuse, especially when considering the evidence of Gateway's failures to disclose on the issue of its possession of Adams' detector.[13]  The Magistrate recommends that Adams' Spoliation Motion be granted in part and that the Court should make findings and impose an evidentiary inference as a result of the missing evidence, warn Gateway that further loss of evidence may result in terminating sanctions,  and impose attorney fees and cost incurred as a result of the Spoliation Motion.

---

[10]Spoliation Report at 28.

[11]*Id*. at 5,  and 16-19.

[12]*Id.* at 20 and 22.

[13]*Id*. at 21 ("It would really be remarkable if there were direct evidence of a party's destruction or intentional loss of evidence.  If concealment were the goal, the means would be concealed.").

Gateway admits that the evidence is missing but contends that no sanctions are warranted because it did not intentionally destroy the evidence and Adams has not been prejudiced.  It further argues that even if those findings are made, that the recommended sanctions are too severe.[14]  Gateway's argument is that the Magistrate erred in finding that Gateway destroyed or intentionally destroyed evidence[15] and that the Magistrate "presumably relies on non-precedential case law holding that a showing of bad faith is not required."[16]

Gateway does not object to the Magistrate's overview of the facts or his summary of the law on spoliation, except to the extent of the Magistrate's citation of an unpublished case noting while a finding of bad faith destruction is required to impose an evidentiary inference, such bad faith is not generally required when considering other sanctions for the spoliation of evidence.[17]  The Court finds that case was accurately cited, is helpful in its discussion of factors to be considered[18] in imposing non-dismissal spoliation sanctions and, in fact, supports Gateway's position that a finding that bad faith is required to impose an evidentiary inference.

---

[14]Objection at 3-4.

[15]*Id*. at 3.

[16]*Id*. at 4.

[17]*Id*. at 5, citing Spoliation Report at 15 (citing *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 1998 WL 68879 (10th Cir. 1998)).

[18]*See* 10th Cir. R. 36.3(b) (Citation of unpublished cases where it would assist the court in its disposition).

Having considered the entire record de novo, including the documents provided after the Spoliation Report issued, the Court finds that Gateway intentionally destroyed or lost the missing Ma to Woon e-mail.  While the Magistrate did not go that far, this Court does.  It is the only interpretation of the entire record of the discovery in this case that makes sense.  It is true that there is no direct evidence of the bad faith destruction of the Ma to Woon e-mail,[19] but neither is there any evidence that it was merely innocently or negligently lost.[20]  Nor is this a case where the party accused of spoliation never actually possessed the evidence in question.[21]  There is however, ample circumstantial evidence of a bad faith spoliation.[22]

The circumstantial evidence includes the information received since the filing of the Spoliation Report regarding a different e-mail--the January 11, 2001 DeRusso to Holstein

---

[19]*See* Spoliation Report at 21.

[20]*See Estate of Trentadue ex. Rel. Aguilar v. U.S.*, 397 F.3d 840, 862-63 (10thCir. 2005) (not error to refuse to sanction litigant for loss of evidence where trial court found that loss of potential evidence was "result of ignorance or incompetence as opposed to intentional act") citing *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997) (inference of bad faith loss of one page of evidence undermined by testimony of circumstances of loss and production of information from another source) and *Vick v. East Texas Employment Com'n,* 514 F.2d 734, 735 (5th Cir. 1975) (no sanction where the "records were destroyed under routine procedures without bad faith and well in advance of . . . service of interrogatories").

[21]*Compare Proctor and Gamble Company v. Haugen*, 427 F.3d 727, 739-40 (10th Cir. 2005) (finding that trial court abused its discretion in dismissing case for failure to preserve evidence where, among other things, the party found culpable never possessed or owned the evidence at issue).

[22]*See Aramburu*, 112 F.3d at 1407 (finding that "any inference of bad faith" arising from witness' testimony that he lost record was undermined by the company's production of other records containing the missing evidence).

e-mail -- a complete hard copy of which was finally produced by a former employee and which showed incriminating information.  As is the case with the Ma to Woon e-mail, Gateway had no explanation as to why it did not have a copy of the complete January 11, 2001 DeRusso to Holstein e-mail.[23]  When finally disclosed to the Court,[24] that missing e-mail was accompanied by a stack of Declarations setting forth information that Gateway's employees and attorneys claim they had previously forgotten, but were reminded of by the re-discovered e-mail.[25]  As discussed below in connection with the Detector report, this sequence of events shows the pattern of Gateway's failure to comply with discovery orders and its willingness to hide important evidence.  When viewed against Gateway's total inability to account for what became of the crucial Ma to Woon e-mail, this pattern of behavior is circumstantial evidence of Gateway's bad faith spoliation of the email.

The disclosures after the Spoliation Report have added sensational evidence to this case.  But the Ma to Woon e-mail is still missing.  There is no evidence to support Gateway's argument that the missing e-mail would be benign or that because Gateway now admits that it possessed the detector that there is no prejudice to Adams from its spoliation of the e-mail.  Contrary to Gateway's arguments, what, if anything, Ma said to Woon in the e-mail is still very central to this case and therefore, its absence is prejudicial

---

[23]Defendant's Response and Reply (Docket No. 375), and Adams' Reply (Docket No. 382) at 4-5 (quoting DeRusso's Deposition testimony that he understood it would have been automatically saved).

[24]The existence of the hard copy was disclosed to Gateway on February 24, 2005.

[25]Gateway's Supp. Accounting, (Docket No. 377) Exs. A through L and Objection (Docket No. 361) Exs. A through C.

to Adams.  Adams alleges that Gateway deliberately obtained his patented detector and used it to correct the problem during the very time that Gateway supplier's employee Ma sent the e-mail with the detector to Gateway employee Woon.  Anything that the Quanta employee said to Gateway about the identity of what was transmitted, and why, could not be more relevant.[26]  Going over the entire history of the attempt to discover the e-mail chain that placed the detector in Gateway's possession at the time of alleged infringement, the Court finds that it is clear that for years Gateway did everything it could to avoid producing complete copies of all of the relevant e-mails.  There is no explanation of the reason that this crucial e-mail is missing.  Based upon the entire record, this Court concludes that the explanation is that it was destroyed in bad faith by Gateway.

Upon de novo review, including the new evidence submitted since the Spoliation Report,  the Court agrees with the Magistrate's factual findings and summary of the case law and will adopt them.  In addition, the Court adds its own findings that it is clear that the Ma to Woon e-mail would have been extremely relevant to this case and there is sufficient circumstantial evidence that (1) it was destroyed by Gateway during the time that Gateway had a duty to preserve it and to produce it in discovery; and (2) Gateway's conduct in destroying the evidence is in bad faith.  These findings warrant imposition of an evidentiary inference that the missing e-mail would have been favorable to Adams.[27]

---

[26]*See* Matava Letter Tab A at 4 (Barry's notes of 5/8/03 meeting with Holstein) ("Here's the software that a supplier received from Dr. Adams.") Tab C, page 2 ¶ 6 (Wagner's Notes same) and Tab D at 3 ¶1 (Wagner's notes of 1/14/05 meeting with Holstein).

[27]*Aramburu*, 112 F.3d at 1407.

As to the other missing evidence, the Court will determine, in the context of trial, whether an adverse inference is warranted for such evidence.  In view of the more recent disclosures of other new evidence, it may be that those other missing items of evidence are not as central to the case as it was once believed and such findings may not be required.

In addition to the inference, the Court finds that an appropriate sanction for Gateway's bad faith spoliation of the Ma to Woon e-mail should include imposition of attorney fees and costs for all of the proceedings related to the spoliation Motion, including the Spoliation Report, the Objection and subsequent briefing.

The Court does not, however, believe that imposing a terminating sanction is warranted for the spoliation of evidence in this case, despite the finding of bad faith, for the following reasons.  First, Gateway was not warned that such terminating sanctions could be imposed.  Second, the sanctions of evidentiary inferences and imposition of attorneys fees and costs is an appropriate remedy that is more tailored to the violation and less drastic than dismissal.  Third, the Court finds that although the spoliation of evidence has made it more difficult and expensive for Adams to make his case, it has not destroyed his ability to do, so long as there is an appropriate inference.

Lastly, the Court will issue a warning to Gateway that if more evidence of a central nature that was in Gateway's possession is determined to be missing for any reason, thereby impairing the ability of the Court to adjudicate the parties' rights, entry of judgment in favor of Adams may be an appropriate remedy.

B.    Detector Report

On March 29, 2005, the Magistrate issued his Sealed Report and Recommendation Re: Gateway's Possession of Adams' Detector and Designation of Consulting Experts (Detector Report).[28]   The Detector Report covered two areas.  First, the Magistrate found that Gateway failed to comply with the specific Order that it provide a complete accounting of the possession, use or transmittal of the detector file,[29] the patented software at issue in this case, during the time of the alleged infringement.  Second, the Magistrate found that Gateway had improperly used a consulting expert designation and otherwise improperly used claims of privilege to hide non-privileged evidence. The Magistrate recommended making findings and drawing inferences from Gateway's delayed production of evidence of its possession of the Adams patented detector, including its failure to comply with the specific Order for a complete accounting on the issue.  The Magistrate also recommended awarding attorney fees and sanctions, issuing a warning that further such conduct will result in entry of judgment in favor of Adams, and prohibiting Gateway from asserting the attorney-client or work product privilege as to Adams as it relates to the claims in this case.

Gateway objects on the grounds that (1) it did not intentionally conceal information because it thought that the information it provided was correct at the time; (2) it complied with the Order as it interpreted the Order; (3) when it discovered information that revealed the accounting was incomplete, it provided more complete information; and (4) Adams has

---

[28]Docket No. 346.

[29]Order Regarding Failure to Disclose Detector (Docket No. 245) (Order for Accounting).  Gateway filed its accounting (the Accounting) on September 10, 2004 (Docket No. 264).

not been prejudiced because he eventually received the information.[30]  Gateway does not, however, apparently object to the recommendation for the award of attorney fees and expenses.

After entry of the Detector Report, Gateway filed a Supplemental Accounting.[31]  The information revealed in the Supplemental Accounting was indeed stunning.  It revealed that not only had Gateway's Chief Technical Officer Holstein received the patented detector through a chain of Gateway employees' e-mails, he had used it – and then there had been an apparent collective memory failure of these facts by Gateway's employees, in-house counsel and retained counsel.  The information in the Supplemental Accounting included hard copies of e-mails elicited by a subpoena to Holstein in preparation for his deposition. The e-mails included one clearly showing that the Adams detector had been forwarded as an attachment through several Gateway employees until it reached Holstein.

The Supplemental Accounting consists largely of carefully worded declarations of the various individuals who knew, but failed to disclose, relevant facts for the Accounting. Those failing to disclose included Gateway's attorney Posthumus. He says that he did not disclose the information about Holstein's possession either when asked by the Magistrate at a July 3, 2003 hearing, or in the Accounting, because he says that during a May 8, 2003,

---

[30]Gateway also alleged that sanctions should not be imposed where Adams lacks clean hands because he failed to produce a document in this case that was recently discovered in related litigation. *See* Docket Nos. 436 and 422. There is not a complete record on that accusation and the Court will not address it in this Order.

[31]Docket No. 377.

meeting Holstein was not sure whose software it was.[32]   The tardy disclosures of Gateway's possession of the detector provoked Adams' Renewed Request for Terminating Sanctions.[33]

When this Court heard argument on Gateway's Objection to the Detector Report, the Court ordered filing of additional information including "any notes by any person or other information relating to the May 2003 meeting with Mr. Holstein and attorney Posthumus."[34]   This request was prompted by the Court's initial finding, upon review of Supplemental Accounting, that it was not believable that so many attorneys and Gateway employees could have either forgotten, or failed to understand the significance of, Gateway's transmission and possession of the patented detector at the time of the alleged infringement.

In response, another of Gateway's counsel submitted five sets of notes under a cover letter.[35]   Three sets of the notes, Tabs A, B, and C, are notes of three attorneys – Posthumus, Barry, and Wagner[36] -- attending the May 8, 2003 meeting,.  Tabs D and E are not responsive to the Court's request as they are Wagner's notes of two subsequent

---

[32]Supp. Accounting, Ex. A at 18-20.

[33]Docket No. 366.

[34]Docket No. 404.

[35]Docket No. 406 is the cover letter (Matava Letter). The tabbed notes are not yet docketed.

[36]Barry and Wagner are in-house counsel for Gateway.

meetings between Holstein and Gateway's counsel in 2005,[37] well after the 2004 accounting.

In support of Gateway's current position, Posthumus' Declaration is very detailed about what Holstein told him at the May 8, 2003 meeting.[38]  However, a review of what Posthumus declares[39] are his only notes from that meeting,[40] shows not one mention of what Posthumus now says Holstein said about a detector.  It defies logic to believe that Posthumus, without notes of what Holstein said, had such a clear recollection at the time of the Accounting of exactly what Holstein had said at the May 8, 2003 meeting.[41]  This is particularly true when the record shows that when queried by the Magistrate in July 2003, a few months after May 8, 2003 meeting, Posthumus did not recall that Holstein had discussed his possession and use of Adams detector.

In stark contrast to Holstein's position, the contemporaneous notes of the other two attorneys attending the May 8, 2003 meeting are full of what Holstein told them about his possession and use of the Adams detector.  There is no indication in those notes that Holstein's recollection was then "very hazy" as it is now described by Gateway.[42]  Instead,

---

[37]The two subsequent meetings were on January 14, 2005 and February 9, 2005.

[38]Supp. Accounting, Ex. A at 18-20.

[39]Document No. 410, Ex. A. at ¶¶ 4, 5 (Posthumus' September 13, 2005 Declaration).

[40]Matava Letter, Tab A.

[41]*See* Supplemental Accounting Ex. A. at ¶ 18.

[42]Gateway's Reply, Docket No. 375 at 3.

the notes of the other two attorneys are remarkably consistent with each other and recount that Holstein knew it was Adams' detector when he received it, took it to his home, and tested it.[43]  Thus, none of the notes of the May 8, 2003 meeting support either Posthumus' Declaration in the Supplemental Accounting or Gateway's current position.

The notes of the 2005 meeting do show some ambiguity in Holstein's knowledge of the identity of the detector, but they are not relevant to the accounting filed in 2004.  Upon review of the entire record on this matter, it appears that Holstein becomes hazier in his recollection through successive meetings with his lawyers, but the tabbed notes to the Matava Letter show that on May 8, 2003, he was clear that it was Adams' detector.

The notes of the May 8, 2003 meeting are just a confirmation of the Court's findings and conclusion upon a de novo review of the entire record.  That conclusion is that Gateway failed to comply with the letter or spirit of the Magistrate's Order for an accounting of its use and possession of the detector and has shown no excuse for doing so.  The Court specifically finds that Gateway's failures to comply were in bad faith.  On this subject the Court relies heavily on matters filed under seal.  Those matters contradict the excuses offered in the sealed Declarations and in Gateway's briefing that its attorneys and

---

[43]Matava Letter, Tab C. at 2., Tab B at 4.

employees were too busy[44] or too shorthanded[45] to find or disclose the information, did not

timely recognize its significance,[46] or just forgot about it.[47]

The Court has reviewed the Detector Report and its related materials de novo and

has considered all of the supplementary material.  Upon said de novo review, the Court

finds that the Magistrate's summary of the facts regarding the detector and the use of

privileges in this case are accurate, succinct, and a compelling read.  The Court has

nothing to add to the Magistrate's comprehensive findings and conclusions regarding

Gateway's abuse of privilege in this case -- a matter not seriously disputed by Gateway.

The Court will adopt the Detector Report in full.  To it, the Court will add its own findings

and conclusions, upon a de novo review, that Gateway failed to comply with the discovery

orders of this Court; that its failure to do so is in bad faith; and has prejudiced Adams.  Not

only has Adams been prejudiced by the delay of several years, there has been the

unnecessary time and great expense caused by Gateway's improper use of privileges as

well as the expenses necessary to resolve discovery on the detector issue.  As discussed

above, the prejudice includes loss of at least one e-mail that is evidence central to this

case.  The Magistrate found that "these repeated conflicts consume time and resources

---

[44]*See* Supplemental Accounting, Ex. A Posthumus Dec. at ¶¶ 9 ("very busy") 12
(same); 14Ex. I Wagner Dec. at ¶ 12

[45]Objection to Spoliation Report at 3-4 ("gateway's downsizing has also made
production an arduous task.")

[46]*Id*. Ex. I Wagner Dec. at ¶ 12

[47]*Id*. Ex. C, DeRusso Dec. at ¶ 7-8, 14; Ex E. Barry Dec. at 9-10;  Ex. F.;
*Compare* Walker Dec. at ¶¶ 5, 9 *with* Holstein Dep. at 163-65.

of the parties and the court, draining them away from the merits of the case."[48]  This Court agrees.

Under Rule 37, the Court possesses the discretion to award attorney fees,[49] to enter judgment, or to issue a contempt sanction for the failure to disclose evidence and to comply with discovery orders.[50]  The sanction chosen by the Court must be "both just and related to the particular claim that was at issue in the order to provide discovery."[51]  The Court must consider lesser sanctions before imposing terminating sanctions.[52]

It is this Court's considered opinion, upon review of the entire record, that terminating sanctions are a close call.  But, as noted by the Magistrate, Gateway was not warned in advance of such a possibility.  The *Proctor and Gamble* case, decided after this matter was briefed,  reiterates the necessity of such a warning and holds that an extreme sanction such as dismissal is seldom warranted.[53]  The Court also finds that Gateway has asserted that it has a meritorious defense to Adams' infringement claims.

---

[48]Detector Report at 49.

[49]*G.J.B. & Ass'n. v. Singleton*, 913 F.2d 824, 830 (10th Cir. 1990) (upholding award of attorney fees and costs against counsel who violated trial court's pretrial order that exhibits to be introduced or discussed at trial be identified).

[50]Fed. R. Civ. P. 37(b)(2)(B) and (C); *Proctor and Gamble Company v. Haugen*, 427 F.3d 727, 737 (10th Cir. 2005).

[51]*Proctor and Gamble*, 427 F.3d at 738 (quoting *Ehrenhaus v. Reynolds,* 965 F.2d 916, 921 (10th Cir. 1992)).

[52]*Id.*

[53]*Id.*

The Court finds that the sanctions recommended by the Magistrate are a measured and proportional response to Gateway's violations of the Magistrate's Order for Accounting, Gateway's abuse of claims of privilege, and its continuing failure to comply with its responsibilities as a litigant to timely and fully disclose evidence.  The attorney fees and costs are likely to be substantial and the evidentiary inferences are serious.  But Gateway has no one but "itself to blame."[54]

The prohibition against asserting privilege to shield documentation and testimony of any Gateway activities prior to the filing of this suit which are related to floppy disk controller errors or to Adams is a serious matter that neither the Magistrate nor this Court takes lightly.  The Court will impose the recommended sanctions, but will not impose the terminating sanction requested by Adams.

On the issue of the sanction for improper claims of privilege, Gateway argues that if such sanctions are awarded, it should not be required to produce legal strategy related to several Qui Tam actions unless that information is related to Adams.[55]  From Gateway's submission, it is not possible to identify such documents.  Within five days of the entry of this Order, Gateway shall file a list identifying those documents that it believes should not be covered by the sanction.

## VI.  WARNING

Gateway opposes the Magistrate's recommendation that it be warned that if there is further evidence that is missing or tardily disclosed, or if it engages in further conduct

---

[54]Detector Report at 31.

[55]Objection at 31, n.13.

that impedes the disclosure or discovery of relevant evidence further severe sanctions, including entry of judgment, shall be imposed.  Such a warning is appropriate and required[56] where the Court is considering such a serious sanction as entry of judgment against a party.  It is a sorry day when this Court finds it necessary to issue such a warning, but Gateway and its counsel should consider themselves warned.

## VII.  UNSEALING ORDER

As noted above, the Court is required to refer to items filed under seal as part of its analysis.  The Court does not intend to retain this Order under seal.  To that end, the Court has not recited its analysis of the facts and its findings in more specific detail than strictly necessary to support its findings of bad faith.  Instead, it has endeavored to refer to the sealed documents in a general way.  If a party has any specific objection to the unsealing of a specific portion of this Order, said party shall file a notice of such objection within five days of the entry of this Order.

## VII.  ORDER

Based upon the foregoing, it is therefore

ORDERED that Gateway's Objection (Docket No. 361) to Magistrate Judge Nuffer's Sealed Report and Recommendation Regarding Spoliation Motions (Docket No. 347) is OVERRULED.  It is further

ORDERED that upon de novo review, the Sealed Report and Recommendation Regarding Spoliation Motions (Docket No. 347) is ADOPTED IN ALL RESPECTS.  It is further

---

[56]*Proctor and Gamble*, 427 F.3d at 738 (applying *Enrenhaus* factors).

18

ORDERED that Gateway's Motion Requesting Inference of Patent Invalidity and Unenforceability Pursuant to the Spoliation Doctrine (Docket No. 186) is DENIED. It is further

ORDERED that Adams' Sealed Motion for Judgment Based Upon Gateway's Spoliation of Evidence (Docket No. 101) is DENIED IN PART and judgment will not be entered in favor of Plaintiffs as a sanction but other sanctions shall be imposed. It is further

ORDERED that the following sanctions are imposed for spoliation of evidence: at trial the Court will make the findings and apply the inferences as follows:

> Some evidence which Gateway should have had in its possession is missing. Gateway has offered no explanation of the reason this evidence is not available. The missing items include: An e-mail sent in January 2001 from Charlie Ma of Quanta Computers to YC Woon, a Gateway employee, which Gateway says was the means by which Gateway came into possession of Adams' detector software. The e-mail has not been produced. As the court has confronted issues which this item of evidence would resolve, it has inferred that the missing evidence would have been favorable to Adams.

but the Court will reserve the issue of findings and inferences as to the Stepp e-mail and the Test Utilities until trial. It is further

ORDERED that Gateway shall pay Adams' attorney fees and costs incurred in connection with the Motion for Judgment Based Upon Gateway's Spoliation of Evidence (Docket No. 101), the Objection to the Spoliation Report and all related proceedings up through the Objection to Lodge Document filed on September 6, 2005.[57] It is further

---

[57]Docket No. 408.

ORDERED that Gateway's Objection (Docket No. 360) to Magistrate Judge Nuffer's Sealed Report and Recommendation Regarding Gateway's Possession of Adams' Detector and Designation of Consulting Experts (Docket No. 346) is OVERRULED.  It is further

ORDERED that upon de novo review, the Sealed Report and Recommendation Regarding Gateway's Possession of Adams' Detector and Designation of Consulting Experts (Docket No. 346) is ADOPTED IN ALL RESPECTS.  It is further

ORDERED that Adams' Motion for Judgment on the Pleadings and for Sanctions (Docket No. 176) and Adam's Renewed Motion for Terminating Sanctions (Docket No. 366) are GRANTED in PART and DENIED in PART.  The Court will impose sanctions, but will not impose terminating sanctions.  It is further

ORDERED that at trial, the Court shall find and infer as follows:

Between Gateway's first meeting with Adams in July 2000 in Salt Lake City and Gateway's last meeting with Adams in San Diego in February 2001, Gateway made specific efforts to obtain software to test floppy disk controllers in its computers.  On or about January 8, 2001, Gateway obtained Adams' patented detector software from a source other than Adams. Gateway had provided the source with a copy of Adams' patent and confirmed that the source had Adams' software.  The source delivered the software to Gateway.

Adams did not know Gateway had possession of his detector software at the time.  Gateway did not disclose that it had Adams' detector software until February 2004, two years after this lawsuit commenced.  Even after Gateway disclosed that it had obtained Adams' detector software, and despite being ordered by the court to provide an accounting of its acquisition of Adams' detector software, Gateway did not disclose all the facts surrounding its acquisition of the detector software.

In instances where Adams lacks evidence of Gateway's use of his detector software, the court has inferred

    a.    that the lack of evidence is caused by Gateway; and

    b.    that Gateway did use Adams' software.

20

It is further

ORDERED that as to Adams, in this litigation, Gateway should be prohibited from asserting the attorney-client or work-product privileges for documentation and testimony of any Gateway activities prior to the filing of this suit which are related to floppy disk controller errors or to Adams.  Within five days of the entry of this Order, Gateway shall file a list identifying those documents that it believes should not be covered by this paragraph. It is further

ORDERED that Gateway shall pay Adams' attorney fees and costs incurred as a result of Plaintiffs' Motion for Judgment and Sanctions Based Upon Failure to Disclose Stolen Detector and Deceptive Use of "Consulting Expert" Designation in Privilege Logs,[58] the Renewed Motion for Judgment, and all of the proceedings regarding the accounting for possession of the detector, up through and including the Detector Report, the Objection, the Order and all related hearings.  It is further

ORDERED that within 30 days of the entry of this Order, Adams shall file an itemization of the costs, including attorney fees awarded herein.[59]  Gateway shall have a period of 15 days thereafter to respond to Adams' submission and the Magistrate judge should thereafter recommend an award of expenses, including attorney fees.  It is further

---

[58] Including the papers enumerated in footnotes 2 through 6 of the Detector Report.

[59] The Court realizes that trial is fast approaching, and upon application to the Magistrate the parties may seek to extend the dates for filing matters related to the award of attorney fees and costs.

ORDERED that Gateway and its counsel are warned that if more evidence of a central nature is missing for any reason or is tardily disclosed, impairing the ability of the Court to adjudicate the parties' rights, entry of judgment against Gateway may be an appropriate remedy.   Further, Gateway is warned that conduct which impedes the disclosure or discovery of relevant evidence may also result in dismissal of its counterclaims, striking some defenses or claims, or the entry of conclusive findings on discrete issues.  It is further

ORDERED that if any party seeks to have any portion of this Order remain sealed, they shall file a notice by March 13, 2006, specifying the portion of the Order they seek to have retained under seal and stating the reason.

DATED this 6th day of March,  2006.

BY THE COURT:

_____
TED STEWART
United States District Judge

United States District Court
for the
District of Utah
March 6, 2006

\*\*\*\*\*\*MAILING CERTIFICATE OF THE CLERK\*\*\*\*\*\*

RE:   Adams, et al v. Gateway
      2:02-cv-00106-TS-DON


Gregory D Phillips
HOWARD PHILLIPS & ANDERSEN
560 E 200 S STE 300
SALT LAKE CITY, UT 84102

David M Connors
MABEY & MURRAY LC
1000 KEARNS BLDG
136 S MAIN ST
SALT LAKE CITY, UT 84101

E. Scott Savage
BERMAN & SAVAGE PC
170 S MAIN STE 500
SALT LAKE CITY, UT 84101

Jeffrey E. Ostrow
SIMPSON THACHER & BARTLETT (PALO ALTO)
3330 HILLVIEW AVE
PALO ALTO, CA 94304

Brian A. Carpenter
GREENBERG TRAURIG (CO)
1200 17TH ST STE 2400
DENVER, CO 80223

David G. Hetzel
LEBOEUF LAMB GREENE & MACRAE (NY)
125 W 55TH ST
NEW YORK, NY 10019

Dennis F. Kerrigan
LEBOEUF LAMB GREENE & MACRAE (CT)

GOODWIN SQ
225 ASYLUM ST
HARTFORD, CT 06103

John R. Posthumus
GREENBERG TRAURIG (CO)
1200 17TH ST STE 2400
DENVER, CO 80223

Jennifer Richards, Generalist Clerk